941 So.2d 634 (2006)
Mark RUSSELL
v.
MOSQUITO CONTROL BOARD.
No. 2006-CA-0346.
Court of Appeal of Louisiana, Fourth Circuit.
September 27, 2006.
*635 Gary M. Pendergast, New Orleans, LA, for Plaintiff/Appellant.
Penya Moses-Fields, City Attorney, Joseph V. DiRosa, Jr., Chief Deputy City Attorney, Victor L. Papai, Jr., Assistant City Attorney, New Orleans, LA, for Defendant/Appellee.
Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge LEON A. CANNIZZARO, JR.
PATRICIA RIVET MURRAY, Judge.
A former permanent classified civil service employee of the Mosquito Control Board of the City of New Orleans ("MCB"), Mark Russell, appeals from a decision by the Civil Service Commission of the City of New Orleans (the "Commission") dismissing his appeal. Agreeing *636 with the MCB (the Appointing Authority)[1] that Mr. Russell voluntarily retired and thus lacked a right of appeal, the Commission dismissed the appeal. We agree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND
From July 27, 1981 until May 31, 2004, Mr. Russell was employed by the MCB. His final position with the MCB was Automotive Section Supervisor. On March 31, 2004, Mr. Russell and a co-worker, Clyde Spain, were involved in a physical alteration. Disciplinary actions were commenced against both of them. On April 13, 2004, the MCB sent a disciplinary letter to Mr. Russell advising him that he was suspended for sixty days without pay pending an investigation. The MCB subsequently decided to terminate him and scheduled a pre-termination meeting. Given Mr. Russell's lengthy tenure with the department coupled with the understanding that he was extremely close to qualifying for early retirement under the "Rule of 80,"[2] the MCB decided to offer him the option of retiring in lieu of termination. In order to facilitate Mr. Russell's retirement process, the MCB offered to take two additional steps: (i) lift his sixty day suspension, and (ii) allow him to take up to thirty days of his accumulated annual leave time. Both of these steps were believed to be necessary in order for Mr. Russell to complete the retirement process under the Rule of 80. The first step was necessary because, as Wilamina Jasmin (an accountant with the retirement department) testified, only an active employee can elect the Rule of 80 retirement. The second step was necessary because Mr. Russell was believed to be several (about twenty-six) days short of qualifying for Rule of 80 retirement.
On Monday, April 26, 2004, the pre-termination meeting was held. In attendance at the meeting were three MCB representatives  Edgar Bordes, Administrator; Michael Carroll, Assistant Administrator; and Stephen Sackett, Senior Entomologist  and Mr. Russell. At the meeting, the MCB representatives presented Mr. Russell with a typed agenda that they had prepared for the meeting. The agenda, which they followed at the meeting, outlined the following five salient points to be covered:
1. Explain circumstances leading to this meeting.
2. Explain that due to the accumulation of past discipline actions and his latest incident (especially threat of arming himself) that we cannot prudently allow him back as an employee.
3. Explain his options: Fired or retired.
4. If fired, tell him that a registered letter will be sent to him.
5. If retired, give him "rule of 80" information and explain that he will be eligible for it tomorrow and that he will receive c. $19-20K. Give him leave summary and status sheets and copy of folder card. Needs to take annual leave (has c. 53 days left). Must give us a letter by Wednesday stating that he is *637 applying for retirement this week and must give us a letter from the retirement board or send his retirement request through Pat by Friday confirming his intent to retire.
Everyone in attendance at the meeting signed the agenda. Next to his signature, Mr. Russell noted: "NO DECISION."
At the meeting, Mr. Russell's response to the proposal was that he needed to discuss the options with his wife. After doing so, Mr. Russell sent a letter to the MCB on April 27, 2004 (the day after the meeting) informing them of his decision to retire. The letter read: "[p]lease forward my request for retirement to the City Retirement Board as soon as possible. I understand that I am now eligible for retirement according to the City of New Orleans `rule of 80.'" On that same date, Mr. Carroll sent an inter office memorandum to Mr. Russell documenting the terms of the agreement between the MCB and Mr. Russell. The April 27th memorandum, which Mr. Russell signed (acknowledging his receipt of a copy and his agreement with its terms), read as follows:
This memo is to clarify your retirement intentions. It is our agreement that you will be taken off of suspension effective 4 P.M. today, April 27, 2004 and placed on annual leave effective 8 A.M. April 28, 2004 for the following 30 days to allow your retirement process to be completed.
If you choose not to complete the retirement process, we will begin your disciplinary pre-termination proceedings as regards the incident with Clyde Spain on 3/31/04. Should the retirement be finalized within the following 30 days, the suspension days that you have already served will close action on this disciplinary matter.
The next day, April 28, 2004, a form requesting "Rule of 80" retirement and bearing the signatures of Mr. Bordes, on the Appointing Authority's behalf, and Mr. Russell was submitted to NOMERS.
On May 12, 2004, Mr. Russell filed an appeal with the Commission. On the Appeal Form, he checked off two disciplinary actions as the grounds for his appeal: (i) the sixty-day suspension imposed on April 13, 2004 by letter; and (ii) the "forced" retirement imposed on April 26, 2004 at an in person meeting.[3]
On July 8, 2004, the Hearing Examiner conducted a hearing on the consolidated appeals of Mr. Russell and Mr. Spain arising out of the March 31, 2004 incident. At the commencement of the hearing, the MCB's attorney raised the issue of whether Mr. Russell lacked a right to appeal given his voluntary retirement. Noting that the Commission had reviewed and opened Mr. Russell's appeal and had placed it on his docket, the Hearing Examiner declined to reach the issue. Shortly thereafter, the Hearing Examiner stopped the hearing for another reason  the MCB's failure to comply with Mr. Russell's and Mr. Spain's rights under Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), to a pre-termination notice and hearing.
On that same date, July 8, 2004, the MCB filed a Motion for Summary Disposition on the basis that Mr. Russell has no legal right of appeal. See City Civil Service Rules, Rule II, § 6 (enumerating as one of the grounds for summary disposition of an appeal "that the appellant has no legal right of appeal.") The MCB contended *638 that Mr. Russell's decision to retire was voluntary in nature and that the MCB accommodated his decision when it modified the previously imposed suspension to allow him to complete the retirement process.
On August 31, 2004, the MCB filed a Supplement to its Motion for Summary Disposition. The MCB provided as an attachment to its supplement an affidavit from Kim DeLarge, Sr. (a NOMERS' employee) outlining the various retirement options available to Mr. Russell as of April 13, 2004.[4] Based on Mr. DeLarge's affidavit and the circumstances surrounding Mr. Russell's retirement, the MCB alleged that there was a mutual bargain confected with Mr. Russell whereby both parties benefited. According to the MCB, the mutual bargain was as follows:
Mr. Russell was allowed to retire early under the "Rule of 80"; he avoided a 3% reduction for each year under 62 if he chose to draw his benefit beginning on his 60th birthday; and he had his retirement benefit being paid from the date of his retirement. Insofar as the appointing authority benefited, Mr. Russell would no longer work for them, and it would be an amicable resolution of the matter.
On October 4, 2004, the Commission remanded the matter to the Hearing Examiner to take evidence for a determination of whether Mr. Russell's retirement decision was voluntary, as the MCB contended, or involuntary (forced) as Mr. Russell contended.[5] At the hearing, the following four witnesses testified: Mr. Carroll, Mr. Bordes, Ms. Jasmin, and Mr. Russell; and, the MCB introduced the following five documents: Mr. DeLarge's affidavit; the agenda for the April 26th meeting; Mr. Russell's April 27th letter to the MCB; the April 27th Inter Office memorandum; and an April 28th computer personnel printout.[6] At the hearing, the Hearing Examiner noted that the facts were not in dispute: Mr. Russell was offered the option of taking early retirement or being fired.
Following the hearing, the Hearing Examiner issued a report in which he noted the following:
 The Appellant was on suspension at the time of the offer and he accepted it. The Appointing Authority put into the record various documents signed by the Appellant concerning his retirement.
 There was a good deal of testimony as to the Rule of 80 and the effects of an involuntary retirement. It was stated that the Appellant was in good spirits and agreed to the offer. The Appellant was to be taken off suspension and allowed to take annual leave to make *639 up the time necessary for the implementation of the Rule of 80.
 The Appointing Authority also makes the case that the violation the Appellant was being disciplined for was solid. That Termination was not a grey area but well warranted.
 Counsel for the Appellant argues strongly that the Appointing Authority should not have the option of forcing an employee to waive his appeal rights.
 The documents offered into evidence were all signed by the Appellant. Of course, the argument of the appellant is that he was "forced" to sign under the threat of termination.
 It is similar to a criminal defendant who pleas guilty and then changes his or her mind. The argument is usually put forward that he or she was forced to do so by the attorney on the case. Although the argument here is more sophisticated, it is the Appellant who had the option of resigning or fighting the suspension and pending termination. The offer was put on the table to allow a resignation and the Appellant was taken off suspension and allowed to resign.
Concluding, the Hearing Examiner found that "[t]he Appellant signed the forms, and he did resign. The Appellant changed his mind for whatever reason and now feels that he was forced to resign. The record and the documents indicate that is not the case and that the resignation was voluntary."
On February 16, 2005, the Commission rendered it decision granting the Appointing Authority's Motion for Summary Disposition and denying Mr. Russell's appeal. The Commission reasoned as follows:
It is uncontroverted that the Appellant completed the "retirement process" and that he is presently receiving the "Rule of 80" pension benefits.
The Appellant's filing of the Appeal Form did not suspend or stop the processing of the Appellant's retirement. At any time prior to the expiration of the 30 day period stipulated in the Inter Office Memorandum of April 27, 2004, the Appellant could have withdrawn from the retirement process and challenged the disciplinary action and participated in the pre-termination hearing as stated in the Inter Office Memorandum. He did not do so.
We view the filing of the Appeal Form as an act taken to preserve the Appellant's right of appeal in the event he elected to halt the retirement process within the 30 day consideration/revocation period. However, once the 30 day period stipulated in the Inter Office Memorandum expired, the Appellant's right to pursue further disciplinary action, viz., termination, were mutually extinguished. The Inter Office Memo Memorandum and the Appellant's actions cannot be read otherwise.
Accordingly, the Commission finds that in making application for and receiving his retirement benefit the Appellant accepted the Appointing Authority's offer as embodied in the Inter Office Memorandum of April 27, 2004, and that the Appellant knowingly and voluntarily waived his rights of appeal arising out of the incident with Clyde Spain on 3/31/04.
This appeal followed.

STANDARD OF REVIEW
In Banks v. New Orleans Police Dep't., XXXX-XXXX, p. 3 (La.App. 4 Cir. 9/25/02), 829 So.2d 511, 513-14, we articulated the standard of review in civil service cases. First, the review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly erroneous standard. Second, when the Commission's decision involves *640 jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial. Finally, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review. See Stern v. New Orleans City Planning Comm'n, XXXX-XXXX, pp. 5-6 (La.App. 4 Cir. 9/17/03), 859 So.2d 696, 699-700.

DISCUSSION
On appeal, Mr. Russell asserts two assignments of error. First, he contends that the Commission committed manifest error in failing to protect his pre-termination due process rights  his Loudermill rights  insofar as the MCB denied him a pre-termination hearing. Second, he contends that the Commission committed manifest error in concluding that he "knowingly and voluntarily waived his rights of appeal" arising out of the incident of March 31, 2004 by accepting retirement in the "fired or retired" options that were presented to him.
Both of Mr. Russell's contentions hinge on whether his retirement was voluntary, as the MCB contends and the Commission found, or involuntary (forced), as he contends. Because an employee's Loudermill rights are designed to protect his property right in continued employment, the employee relinquishes those rights when he voluntarily resigns or retires. See Abel v. Auglaize County Highway Dep't, 276 F.Supp.2d 724, 738 (N.D.Ohio 2003)(finding employee's resignation renders Loudermill inapplicable). However, "[a] public employer obviously cannot avoid its constitutional obligation to provide due process by the simple expedient of forcing involuntary `resignations.'" Stone v. University of Maryland Medical System Corp., 855 F.2d 167, 173 (4th Cir. 1988).
Similarly, an employee has no right to appeal when the employee voluntary resigns or retires. Palmisano v. Department of Fleet Management, Parish of Jefferson, 97-745, p. 5 (La.App. 5 Cir. 12/10/97), 704 So.2d 862, 864. However, an employee has a right to appeal when the employee is either forced to resign or involuntarily resigns. The reason an appeal lies in the latter context is to preclude the characterization of disciplinary action as a "resignation" to subvert an employee's right to appeal provided for by La. Const. Art 10, § 8. Peterson v. Department of Streets, 369 So.2d 235, 237 (La.App. 4th Cir.1979). "[T]he question of whether an employee has the right to appeal is analogous to the question of whether a plaintiff has a cause of action." Banks, XXXX-XXXX at p. 3, 829 So.2d at 514.
The narrow issue before us is thus whether Mr. Russell's retirement decision was voluntary. Mr. Russell contends that it was not voluntary because he was "threatened and coerced into making a decision under circumstances where he had no true or valid choice." He further contends that he acted out of a "sense of self preservation and was neither told nor instructed that by accepting the retirement option, that he would forfeit any rights that he might have to an appeal before the Civil Service Commission." He still further contends that there is no evidence that he intended to retire from his job and that he did not understand that by choosing to retire he was giving up his appellate rights.
*641 The MCB counters that Mr. Russell relinquished his Loudermill rights by voluntarily resigning or alternatively that his rights were satisfied. It further counters that Mr. Russell's retirement choice was a voluntary decision, which he made for various reasons including: (i) avoiding the final entry in his City employment record reading "terminated," which would impair his future job prospects; and (ii) financial considerations. As to the financial considerations, the MCB points out that the alternative to a "Rule of 80" retirement would have been a delay, if Mr. Russell opted to be fired, in accessing his retirement benefits. He would have to wait, at the earliest, until January 2007  his sixtieth birthday  in order to collect benefits under a separation retirement. He also would have to take a reduction in his benefits for each year under age sixty-two if he chose to draw his benefits beginning at age sixty.
In determining whether an employee's retirement choice was voluntary, the federal jurisprudence has enumerated the following four factors for courts to consider: "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation." Parker v. Board of Regents of Tulsa Jr. College, 981 F.2d 1159, 1162 (10th Cir.1992)(quoting Stone, 855 F.2d at 174).[7] We separately address each factor.
(1) whether the employee was given some alternative to resignation
Although the MCB gave him the option of either retiring or being terminated, Mr. Russell argues that he had no viable alternative but to retire. Rejecting similar arguments, the federal jurisprudence has repeatedly upheld resignations made by employees to avoid a threatened termination for cause. Christie v. United States, 207 Ct.Cl. 333, 518 F.2d 584, 588 (1975)(collecting cases).[8] In Christie, the court affirmed a Commission's finding that the employee voluntarily chose to resign and to accept retirement rather than challenge the validity of her proposed termination for cause. Rejecting the employee's argument that she had no viable alternative but to resign, the court reasoned that "[s]he could stand pat and fight. She chose not to. Merely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation." Christie, 518 F.2d at 587. By analogy, Mr. Russell had a choice in that he could have stood pat and fought his termination.
(2) whether the employee understood the nature of the choice he was given
Mr. Russell does not dispute that he understood his options. Indeed, as the Hearing Examiner emphasized, his options were set forth in several written documents, which he signed. The agenda for *642 the pre-termination meeting set forth the options of retirement or termination. The inter office memorandum clarified the terms of the agreement the MCB reached with Mr. Russell. The agreement, as Mr. Bordes testified, was "that he [Mr. Russell] would take the retirement and that would end the disciplinary conflict." Mr. Russell's decision to retire was documented in his own letter to the MCB and in the form that was submitted to NOMERS.
The record reflects, as the MCB contends, that Mr. Russell made a considered decision taking into account several factors, including avoiding the final entry in his employment record being "fired" and financial considerations. Mr. Russell testified at the hearing that he "did not want the fired to appear on . . . [his] record" and acknowledged that if he retired he would have a positive mark on his record so that he could go out and get another job. Conversely, Mr. Carroll testified that if Mr. Russell opted to be terminated, the MCB would have to disclose this fact to other potential employers, which would make it difficult for him to get another job. Mr. Russell also testified that he considered the financial ramifications of his decision. According to Mr. Russell, he and his wife "figured that with retirement . . . [they] would have some income coming in to live on," albeit not enough.
(3) whether the employee was given a reasonable time in which to choose
The MCB did not require Mr. Russell to make a decision on the spot at the pre-termination meeting. Rather, the MCB honored his request for time to discuss the options with his wife. As reflected in the April 26th agenda for the pre-termination meeting, the MCB gave Mr. Russell two days (until April 28th) in which to choose.
(4) whether he was permitted to select the effective date of resignation
Mr. Russell's retirement date was determined based on his completion of the retirement process, i.e., his qualification under the Rule of 80. When he signed the necessary documents requesting the Rule of 80 retirement, Mr. Russell ratified the retirement date contained therein, May 31, 2004, as his own. See Christie, 518 F.2d at 588 (finding employee ratified retirement date as her own when she signed retirement documents and that her signature satisfies the requirement she select her own effective date of resignation).
Application of these factors thus supports a finding that Mr. Russell's retirement was voluntary. Accordingly, we find no error in the Commission's decision that Mr. Russell's retirement was voluntary and that he lacked a right to appeal. As explained above, our finding that his retirement was voluntary renders Loudermill inapplicable.

DECREE
For the foregoing reasons, we affirm the judgment of the Commission.
AFFIRMED.
NOTES
[1] Under the City Civil Service Rules, the "Appointing Authority" is defined as "any officer, board, agency, commission, or person having the power to make appointments to positions in the city service." City Civil Service Rules, Rule I, § 1.
[2] The "Rule of 80" is one of the three types of retirement available under the City of New Orleans Retirement System ("NOMERS"). Early retirement is available under the "Rule of 80" to an active employee who, regardless of age, has a combined chronological age and years of service totaling at least 80.
[3] Attached to the Appeal Form was an extensive typewritten summary regarding the March 31, 2003 incident. We note, as the Hearing Examiner noted, that the merits of the underlying incident are not before us.
[4] Mr. DeLarge attested that Mr. Russell had twenty-two years and eight months retirement credit with NOMERS. He further attested that Mr. Russell will be sixty years old in January 2007. Mr. DeLarge explained that as of April 13, 2004, Mr. Russell was eligible for Rule of 80 retirement. He further explained that Mr. Russell would be eligible for a separation retirement at a reduced benefit as early as age sixty and for a separation retirement with no reduction at age sixty-two.
[5] In so doing, the Commission advised Mr. Russell that if it concluded his retirement was involuntary, then before his employment rights could be restored he would have to repay all the retirement benefits he received and all the annual leave he used for the period during which he applied for his retirement.
[6] The computer personnel printout dated April 28, 2004 that was introduced reflects the actions taken by the MCB. There is a handwritten notation on the printout, which states that Mr. Russell "returned to work 30 days on A/L [Annual Leave] until `Rule of 80' retirement is effective 5/31/04."
[7] The parties cite no Louisiana cases, and our research revealed none, providing any guidance on the factors to be considered in making this determination. We thus look to the federal jurisprudence for guidance on this issue.
[8] However, the federal courts have required that "the threatened termination must be for good cause in order to precipitate a binding, voluntary resignation." Christie, 518 F.2d at 588 (emphasis supplied). In this context, the "good cause" requirement is met "as long as plaintiff fails to show that the agency knew or believed that the proposed termination could not be substantiated." Id.