# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-554

**PEMELLA WILLIAMS**

**VERSUS**

**THE BOARD OF SUPERVISORS, LOUISIANA
COMMUNITY & TECHNICAL COLLEGE SYSTEMS, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20123844
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy H. Ezell, Van H. Kyzar, and Jonathan W. Perry, Judges.

**AFFRIMED IN PART, REVERSED
IN PART, AND REMANDED.**

**Amanda G. Clark**
**Mason C. Johnson**
**Erica Schirling Aguillard**
**FORRESTER & CLARK, L.L.C.**
**4981 Bluebonnet Blvd.**
**Baton Rouge, LA 70809**
**(225) 928-5400**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
   **The Board of Supervisors of the Louisiana Community**
   **and Technical College Systems**
   **Phyllis Dupuis**

**J. Arthur Smith, III**
**830 North Street**
**Baton Rouge, LA 70802**
**(225) 383-7716**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **Alicia Williams, legal successor to Pemella Williams**

**KYZAR, Judge.**

Defendants, the Board of Supervisors of the Louisiana Community and Technical College Systems (the Board) and Phyllis Dupuis, appeal the trial court judgment granting partial summary judgment to Plaintiff, Pemella Williams, [1] finding that Defendants violated Ms. Williams' constitutional right to procedural due process. Defendants further appeal the trial court's denial of their motion for summary judgment, seeking to dismiss all of Plaintiff's claims against them with prejudice, as well as the trial court's denial of qualified immunity as to Phyllis Dupuis. For the following reasons, we affirm the judgment of the trial court in part, reverse in part, and remand for proceedings consistent herewith.

## FACTS AND PROCEDURAL HISTORY

This matter arose as a teacher/tenure claim after Plaintiff, Ms. Williams, was presented with a termination letter on July 11, 2011. Plaintiff began her employment with Acadiana Technical College (ATC) in 1979. ATC came under the jurisdiction of the Board on July 1, 1999, with a policy that all employees who were transferred to the employment of the Board on July 1, 1999 would retain all property interests and due process interests acquired prior to the transfer of jurisdiction. Phyllis Dupuis was the Regional Director of ATC at all times relevant herein.

Prior to receiving the July 11, 2011 letter, Plaintiff was the Department Head of Health Occupations at the Lafayette campus of ATC, as well as acting as a classroom/clinical nursing instructor. In this role, Plaintiff's job duties included providing career counseling to students, maintaining program credentials and licensing requirements, and providing academic advice to program students. In the

---

[1] Alicia Williams, the daughter of Pemella Williams, was substituted as party plaintiff after Pemella Williams passed away on September 27, 2016. All references herein to "Plaintiff" are meant to refer to Pemella Williams.

fall of 2010, Plaintiff was made aware that the Louisiana State Board of Practical Nurse Examiners, which is responsible for establishing the minimum requirements prospective nurses must meet before sitting for the national nursing exam, instituted a new requirement that graduating students must obtain FBI background clearance before sitting for the exam. Plaintiff was also made aware that students would be required to request the FBI clearance at least six months before attempting to sit for their nursing exam to ensure all background check results would be timely. Despite this, Plaintiff failed to inform nursing students set to graduate in May 2011 of the new FBI background check requirements, as required by her duties as Department Head.

ATC and the Board became aware of Plaintiff's oversight in May 2011, when Ms. Dupuis began receiving complaints from students who had not been authorized to sit for the nursing board exams based upon their lack of FBI background clearance. This caused repercussions for both the graduating nursing students and the reputation of ATC's nursing program, as passing nursing boards is a pre-requisite to employment in the field. Ms. Dupuis and Plaintiff met several times regarding the incident, the significance of the incident, and any potential legal ramifications, as many students had threatened legal action. Ms. Dupuis also consulted with the Board's legal counsel, Leo Hamilton, the Board's assistant manager of Human Resources, Francis Killen, and ATC's manager of Human Resources, Trevor Menard.

Following discussions about the incident over the course of May and June of 2011, Plaintiff received a letter on July 11, 2011, referencing her termination, though advising her that she would be paid wages and benefits through July 29, 2011. Plaintiff requested instead that she be allowed to retire, which request was granted less than a week later. At that point, Plaintiff retained an attorney who asserted that

2

she had suffered a due process violation. ATC determined that the formal procedures required for termination of employment did apply and had not been completed. Thereafter, ATC effectively revoked the July 11, 2011 letter and prepared to conduct the formal process for termination.

Instead, Plaintiff executed Teacher Retirement System of Louisiana (TRSL) paperwork on July 20, 2011 certifying that she planned to retire from ATC. She was continued on administrative leave with pay and full benefits and retained her title as Department Head until she retired effective August 31, 2011. Before this chosen retirement date, Plaintiff's attorney sent a letter to ATC demanding reinstatement, claiming that Plaintiff was not still employed. On August 25, 2011, Plaintiff notified ATC by letter from her attorney that she would retire on September 1, though she reserved her right to pursue any civil remedies. Plaintiff then filed the instant suit after her retirement date, claiming unlawful discharge without due process.

Plaintiff filed a motion for partial summary judgment, requesting a finding that the actions of Defendants violated her federal and state constitutional rights to Due Process. Defendants filed a cross motion for summary judgment, seeking the dismissal of Plaintiff's claims with prejudice. Following arguments on the motions, the trial court granted Plaintiff's motion for partial summary judgment and denied Defendants' cross motion. It is from this judgment that Defendants appeal, asserting five alleged errors.

## ASSIGNMENTS OF ERROR

(1) The trial court committed legal error in finding that plaintiff suffered a deprivation of Procedural Due Process Rights when she was never terminated.

(2) The trial [court] committed legal error in failing to recognize plaintiff's retirement as a knowing and voluntary waiver of her Procedural Due Process Rights.

3

(3) In failing to consider whether plaintiff was afforded constitutionally sufficient pre-termination process based on the undisputed fact that the willful neglect forming cause for her termination was discussed with her informally and was set forth in her termination letter, the trial court committed legal error.

(4) Denying Defendants' Summary Judgment seeking dismissal of the official capacity claim against Phyllis Dupuis was legal error.

(5) The trial court was manifestly erroneous in failing to find Phyllis Dupuis is entitled to Qualified Immunity.

## OPINION

### *Standard of Review*

An appellate court reviews a judgment granting or denying a motion for summary judgment *de novo*, using the same criteria which govern a trial court's consideration regarding the appropriateness of summary judgment. *Menard v. City of Lafayette*, 01-4 (La.App. 3 Cir. 5/23/01), 786 So.2d 354. Summary judgment may be granted only if the mover has proved, through the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, that there remain no genuine issues of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. A genuine issue of material fact, for summary judgment purposes, is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764.

"Despite the legislative mandate now favoring summary judgments, 'factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor.'" *Menard*, 786 So.2d at 356 (quoting *Willis v. Medders*, 00-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050).

### *Deprivation of Procedural Due Process Rights*

4

Defendants' first three assignments of error all relate to the trial court's finding that Plaintiff's right to procedural due process was violated, and as such, we will address them together. Plaintiff asserts she was a tenured employee with ATC during all relevant times. Louisiana law is well settled that teacher tenure law vests a property right interest in the teacher employee. *LaPointe v. Vermilion Par. Sch. Bd.*, 15-432 (La. 6/30/15), 173 So.3d 1152. Once these property right interests have been created, said employees cannot be terminated without due process of law. *Id.*; U.S. Const. amend. XIV; La.Const. art. 1, § 2. The Due Process Clause provides that the substantive rights of life, liberty, and property cannot be deprived except pursuant to constitutionally adequate procedures. U.S. Const. amend. XIV. "Once property interests are created, they may not be deprived without adequate legal process." *LaPointe*, 173 So.3d at 1158.

In addition to showing the deprivation of her due process rights, Plaintiff must also show that the same rights were not waived when she chose to retire. *Russell v. Mosquito Control Bd.*, 06-346 (La.App. 4 Cir. 9/27/06), 941 So.2d 634. The main issues at hand are whether Plaintiff's due process rights were violated when she was allowed to retire but was not given a full termination hearing and whether that retirement was voluntary.

The requirements of due process vary according to circumstance, as it is, by nature, an imprecise ideal. *Lange v. Orleans Levee Dist.*, 10-140 (La. 11/30/10), 56 So.3d 925. "The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495 (1985). Therefore, the central questions in this case are whether Plaintiff was aware of the charges against her, whether she was afforded an adequate

5

opportunity to respond to the charges against her, and whether her retirement was voluntary.

Ms. Dupuis claims to have met and communicated with Plaintiff many times through May and June 2011 regarding the incident that led to the eventual end of Plaintiff's employment with ATC. Plaintiff asserts that she discovered her error in failing to notify her students of the FBI background requirement immediately after graduation in May. The letter informing Plaintiff of ATC's decision to terminate her is signed July 11, 2011. Therefore, Plaintiff had at least thirty days' notice regarding the incident and potential repercussions, as is mandatory per ATC's removal policy. However, the question remains as to whether Plaintiff had an opportunity to respond before being deprived of her continued employment.

A pre-termination hearing need not be elaborate. *Loudermill*, 470 U.S. 532. "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* at 545. It has already been noted that the opportunity to present reasons against why a proposed action should not be taken can be in writing or verbal. *Id.*

Plaintiff contends that not only was her termination not warranted, which we do not address, she further asserts that she was never given an opportunity to give reasons why she should not be terminated before being presented with her termination letter on July 11, 2011, which referenced immediate termination.[2] This is in direct contradiction to Ms. Dupuis's claims that she and Plaintiff discussed the error and potential consequences many times over the preceding two months. As there are no specific requirements to a pre-termination hearing outside of being

---

[2] It is important to note that though the July 11 letter does state that Plaintiff's termination is effective immediately, it also states that Plaintiff was to continue receiving pay and benefits until July 29, 2011, thus, effectively continuing her employment through that date.

6

provided notice and an opportunity to respond, these requirements were potentially met in Plaintiff's meetings and discussions with her supervisor, Ms. Dupuis.

Further, Defendants essentially argue that any error regarding the procedures necessary to satisfy Plaintiff's due process rights when she was originally given her termination letter on July 11, 2011 was cured by subsequent events. Defendants assert that while it is possible the July 11, 2011 termination letter did not comport with due process requirements, this letter was rescinded after ATC was alerted to this possibility by Plaintiff's attorney. ATC determined that procedures of termination did apply and was prepared to conduct the formal process for termination. Plaintiff admits that she was continued on administrative leave with pay and full benefits as the Department Head for this period and continuing as such until her selected retirement date. It is well established that "[p]lacement on paid administrative leave does not constitute deprivation of a property interest," and as such, does not implicate due process concerns. *Devall v. Hammond Mun. Fire & Police Civil Serv. Bd.*, 14-1381, p. 13 (E.D.La. 12/2/14), 2014 WL 6774249. Therefore, a question remains as to whether sufficient formal procedures for termination would have been implemented by ATC before adverse employment action was taken if Plaintiff had not requested to retire.

Based upon this, Defendants contend that Plaintiff could not have suffered a Due Process violation as she was never actually terminated. Alternatively, since Plaintiff requested to be allowed to retire and was granted said request, her retirement was voluntary, and thus, due process concerns are not implicated. "Because an employee's *Loudermill* rights are designed to protect his property right in continued employment, the employee relinquishes those rights when he voluntarily resigns or retires." *Russell*, 941 So.2d at 640; *see also Abel v. Auglaize County Highway Dep't*, 276 F.Supp.2d 724, 738 (N.D.Ohio 2003) (finding

7

employee's resignation rendered *Loudermill* inapplicable). As such, "an employee has no right to appeal when the employee voluntary [sic] resigns or retires." *Russell*, 941 So.2d at 640. It is undisputed that Plaintiff completed the retirement process and paperwork and received retirement benefits.

Plaintiff argues that if it is found that she did retire, such retirement was not voluntary. Much like in *Russell*, 941 So.2d 634, Plaintiff argues that the only options available to her were either to be terminated or to retire. Defendants claim that Plaintiff's retirement choice was a voluntary one made for various reasons; the main one being that by choosing retirement rather than potential termination, Plaintiff would be allowed to stay on as an employee on administrative leave until the completion of her Deferred Retirement Option Plan (DROP). Plaintiff had enrolled in DROP some three years earlier and was scheduled to be fully vested by the Fall of 2011, which Defendants claim establishes that Plaintiff was already preparing for retirement before the subject incident. Plaintiff could have chosen to fight her termination and could have potentially been terminated before being fully vested in her DROP benefits. As the fourth circuit noted in *Russell*, 941 So.2d at 641:

> In determining whether an employee's retirement choice was voluntary, the federal jurisprudence has enumerated the following four factors for courts to consider: "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation."

Although Plaintiff was not initially offered the option of retirement, less than a week after being presented with her notice of termination, and before any actual termination or adverse employment action had been effectuated, Plaintiff was indeed offered the option of being allowed to retire. Plaintiff argues that the choice between retirement and termination did not offer viable alternatives to retirement, making it forced; however, the federal jurisprudence has repeatedly rejected this argument and

8

upheld resignations that were made in order to avoid threatened termination. *Id.*; *Christie v. United States*, 207 Ct.Cl. 333, 518 F.2d 584 (1975). In *Christie*, the court rejected the employee's argument that she was essentially forced to resign, reasoning "[s]he could stand pat and fight. She chose not to. Merely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation." *Christie*, 518 F.2d at 587. Similarly, Plaintiff here could have chosen to fight her termination for cause.

The second prong of this test is whether Plaintiff understood the nature of the choice she was given. After Plaintiff was given notice that her request to retire would be granted, she retained counsel who asserted that she had suffered a due process violation. Defendants claim that it was after receiving this notice from Plaintiff's counsel that ATC revoked the July 11 termination letter and began preparing for the formal termination process. After this occurred, Plaintiff executed the necessary paperwork certifying that she planned to retire from ATC effective August 31, 2011. Plaintiff again notified ATC, by letter from her attorney dated August 25, 2011, that she would be retiring. Plaintiff retained counsel before her retirement was finalized and while she was still on administrative leave, before a hearing as to any actual adverse employment action had been taken.

The third and fourth factors for consideration are whether Plaintiff was given a reasonable time in which to make her decision to retire and select her date of retirement. The jurisprudence does not specifically state what such a reasonable time period is, and therefore, the issue must be considered on a case by case basis. While the July 11 letter references immediate termination, it also states that Plaintiff would continue to receive pay and benefits until July 29, 2011, thus delaying termination until then. However, Plaintiff was not informed that her request to retire

9

was granted, thus making retirement a viable option, until the week after July 11, 2011. While we note that in *Russell*, 941 So.2d 634, the fourth circuit found two days to be sufficient time in which to allow Mr. Russell to make his decision, we find this to be a question that should be answered by the factfinder.

The final prong questions whether Plaintiff was permitted to select the effective date of her retirement. It is undisputed that, once retirement was certain, Plaintiff was able to select a date of her choosing and was continued on paid administrative leave until said date arrived.

In light of the above, we find that there remain questions of fact in the current case. Whether Plaintiff was given or would have been given an opportunity to respond adequately to the allegations against her such as to satisfy due process requirements had she not retired is clearly a contested, material fact, especially given Ms. Dupuis' affidavit stating that ATC was fully prepared to conduct formal termination proceedings, including a hearing, if Plaintiff chose not to retire. Whether Plaintiff's retirement was voluntary or forced based upon considerations such as whether she was genuinely given a choice, as she had to request the option to retire, is yet another material fact. Whether the period from July 11 to July 29 was a reasonable period in this case for Plaintiff to make the decision to retire and whether she understood her legal options at the time are unanswered questions of fact making summary judgment inappropriate. Making findings of fact requires a weighing of the evidence by the trier of fact, which is impermissible at the summary judgment stage of any legal proceeding. *Tepper v. Red River Acad., L.L.C.*, 14-1028 (La.App. 3 Cir. 2/4/15), 157 So.3d 1142. In ruling on summary judgments, "factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Menard*, 786 So.2d at 356.

10

The trial court granted Plaintiff's motion for summary judgment and denied Defendants' motion for summary judgment, finding that Plaintiff's due process rights had been violated. Summary judgment may only be granted if there remain no genuine issues of material fact. La.Code Civ.P. art. 966. A material fact for the purpose of summary judgment is one that would matter at a trial on the merits. *Johnson v. Concordia Bank & Trust Co.*, 95-1187 (La.App. 3 Cir. 3/27/96), 671 So.2d 1093. Given the disputed evidence and the complexity of the questions, we find that the issue of liability was not suitable for summary judgment, as such questions are best left for decision following a trial on the merits. As such, we affirm the judgment of the trial court denying Defendants' motion for summary judgment, reverse the trial court's judgment granting Plaintiff's motion for summary judgment, and remand this issue back to the trial court for trial on the merits.

### *Qualified Immunity*

Defendants' fourth and fifth assignments of error assert that the trial court erred in failing to find that Ms. Dupuis is entitled to qualified immunity and for failing to grant their motion for summary judgment on said immunity. Qualified immunity protects an individual state official from liability for money damages where the defendant acts within the course of his or her official capacity in a manner that is objectively reasonable and in good faith, even if the conduct or action, in and of itself, violates a plaintiff's constitutional rights. *Richard v. Bd. of Sup'rs of La. State Univ. & A & M Coll.*, 06-927 (La.App. 1 Cir. 3/28/07), 960 So.2d 953. "Whether an official protected by qualified immunity may be held personally liable for allegedly unlawful official actions generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time the action was taken." *Christian v. Fontenot*, 28,175, pp. 13-

11

14 (La.App. 2 Cir. 4/8/96), 672 So.2d 436, 445, *writ denied*, 96-1385 (La. 9/13/96), 679 So.2d 105 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982)).

In *Moresi v. Dep't of Wildlife and Fisheries*, 567 So.2d 1081 (La.1990), the Louisiana Supreme Court, in interpreting *Harlow*, 457 U.S. 800, developed a two-part test to determine if a particular official was entitled to qualified immunity. "First, the court must determine whether the law was clearly established at the time the action occurred. Second, if the law is clearly established, the defendant must show that, because of extraordinary circumstances, he neither knew nor should have known of the relevant standards." *Christian*, 672 So.2d at 446. This test generally turns on the "objective reasonableness of the action[.]" *Tx. Faculty Ass'n v. Univ. of Tx. at Dallas*, 946 F.2d 379, 389 (5th Cir.1991).

We have declined to determine whether Plaintiff's rights were clearly violated at this stage of the proceedings. However, we find that such an answer is rendered unnecessary for our current discussion of whether Ms. Dupuis is entitled to qualified immunity based upon the second prong of the test iterated by the supreme court in *Moresi*, 567 So.2d 1081. Plaintiff argues that Ms. Dupuis' actions were not objectively reasonable given the relevant jurisprudence regarding procedural due process rights of tenured faculty members. Plaintiff specifically states in brief that Ms. Dupuis could "have easily known, if she had bothered to ask any of the lawyers for the State." However, this argument appears in direct contradiction to Ms. Dupuis' affidavit testimony. Ms. Dupuis testified that she conducted a pre-termination investigation by consulting with the Board's attorney, the Assistant Human Resources Manager in the Systems office for the Board, and ATC Human Resources manager regarding what to do about the situation with Plaintiff and going so far as to get approval for the July 11, 2011 termination letter before presenting it to Plaintiff.

12

At the relevant time for the instant case, Ms. Dupuis had only been in her position as the appointing authority for a short while and had not yet been involved in the termination of a permanent employee. She, therefore, sought the advice of counsel and human resources to determine the correct course of action; all of whom agreed that the appropriate sanction would be to notify Plaintiff of their intention to terminate Plaintiff's employment. Given this information, a reasonable officer could not have clearly known that her actions were unlawful. Nor could her actions be considered plainly incompetent. Instead, Ms. Dupuis took precautionary measures to ensure that the best course of action was taken, and under the circumstances, we find that the decision to provide written notice of termination to Plaintiff was not "objectively unreasonable" based upon the information provided to Ms. Dupuis during her pre-termination investigation. *See Richard*, 960 So.2d 953.

Accordingly, we find that Ms. Dupuis is entitled to qualified immunity for her role in Plaintiff's end of employment decisions with ATC and reverse the trial court's denial of summary judgment on this issue.

## DISPOSITION

Based upon the foregoing, we affirm the trial court's denial of summary judgment on the issue of liability to Defendants, the Board of Supervisors of the Louisiana Community and Technical College Systems and Phyllis Dupuis. We further reverse the trial court's grant of summary judgment to Plaintiff, Pemella Williams, that her constitutional right to procedural due process had been violated, finding that this issue is not ripe for summary judgment and remanding to the trial court for a full trial on the merits. We further reverse the trial court's denial of summary judgment on the issue of qualified immunity in regards to Defendant, Phyllis Dupuis, finding her entitled to qualified immunity in this instance. Costs of this appeal are assessed equally to both parties.

13

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

14