STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-515

SABRINA FARACE

VERSUS

CITY OF PINEVILLE

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 260,789
HONORABLE MONIQUE RAULS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

SHANNON J. GREMILLION
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**COOKS, judge, dissents and assigns reasons**

**AFFIRMED.**

**C. Theodore Alpaugh, III**
**Guste, Barnett, Schlesinger, Henderson & Alpaugh, L.L.P.**
**639 Loyola Avenue, Suite 2500**
**New Orleans, LA  70113**
**(504) 529-4141**
**COUNSEL FOR APPELLANT:**
     **Sabrina Farace**

**Mark F. Vilar**
**Aaron L. Green**
**1450 Dorchester Drive**
**P.O. Box 12730**
**Alexandria, LA  71315-2730**
**(318) 442-9533**
**COUNSEL FOR APPELLEE:**
     **City of Pineville**

**GREMILLION, Judge.**

Appellant, Sabrina Farace, an employee of the Pineville Police Department, appeals the judgment of the trial court affirming the decision of the Pineville Municipal Fire and Police Civil Service Board (hereafter Board) to uphold her involuntary discharge that occurred on November 10, 2016. For the following reasons, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

At the pertinent time in question, Ms. Farace had been employed as a police officer with the Pineville Police Department for approximately seven years. The record established Ms. Farace was on authorized sick leave from October 26, 2016 through November 8, 2016 ("Excuse 1"). She was designated to return to her job on November 9, 2016. Ms. Farace did not return to work that day, but instead saw her physician, Dr. Charlotte Merrill, at 8:00 a.m. that morning. Ms. Farace maintained Dr. Merrill continued her sick leave through November 22, 2016 ("Excuse 2"). Dr. Merrill testified that, after seeing Ms. Farace on November 9, she "decided the best thing for [Ms. Farace] would be to take an extension and have a two week excuse." Dr. Merrill testified that she handed Excuse 2 to Ms. Farace, who then told Dr. Merrill she was "going right now to hand this in." There was a dispute as to when the City received Excuse 2.

Ms. Farace contends that she contacted Ms. Tammie Connella, the secretary to Pineville Police Chief Don Weatherford, the two met in the side parking lot of the police station, and she handed Excuse 2 to Ms. Connella. This was disputed by the City of Pineville, which claims that it did not received Excuse 2 on November 9, 2016. It is not disputed that Ms. Farace previously handed Ms. Connella Excuse 1, but Ms. Connella testified that she never received Excuse 2 from Ms. Farace.

3

Ms. Farace was called by Deputy Chief of Operations James Rachal to the Pineville Police Department on November 10, 2016. Deputy Chief Rachal informed Ms. Farace that her failure to report on November 9, 2016 constituted a resignation in accordance with Rule XII, Section P of the Pineville Municipal Fire and Police Civil Service Board. Ms. Farace did not voice any objection or allege any basis existed to extend her sick leave but signed the resignation notice and left the premises. Later that day, a Personal Action Form was submitted to the City, and the Board processed her resignation.

According to Ms. Farace, following the November 10 meeting, she then went immediately to see Dr. Merrill, who wrote a letter to Chief Weatherford explaining that Ms. Farace had not been released to return to work on November 9, 2016 and was still on sick leave. Dr. Merrill described Ms. Farace as being "very distraught," and Ms. Farace told Dr. Merrill she had been "fired."

Dr. Merrill testified that her office attempted to fax the letter to Chief Weatherford that day; however, the time stamp from the chief's fax machine shows it was received on November 15, 2016. Dr. Merrill testified she could not explain why the fax was not received until November 15, 2016, but maintained that she sent it on November 10, 2016, and received "verification on our end" in the form of a message on her fax machine.

Chief Weatherford testified that on November 9, 2016, he was contacted by the sergeant running the morning shift to ask why Ms. Farace had not reported for her shift. Chief Weatherford asked Ms. Connella whether there were any other excuses to extend Ms. Farace's leave but was told there were none. According to Chief Weatherford, the department waited the entire day to see if Ms. Farace would contact them to explain why she had not appeared for her shift. Chief Weatherford

4

acknowledged that no attempt was made by the City to contact Ms. Farace to determine why she had not appeared for work.

Deputy Chief Rachal testified he called Ms. Farace into his office on November 10, 2016 and gave her the "resignation" letter with instructions to sign. He stated Ms. Farace did not, at any point during the time she was in his office, mention anything about a doctor's note extending her sick leave. Deputy Chief Rachal did acknowledge that Ms. Farace asked about her gun that had previously been taken from her. He testified that Ms. Farace was in his office no more than five minutes.

Ms. Farace testified she turned in Excuse 2 on November 9, 2016. She stated she "physically put it into [Tammie Connella's] hands" when she met her in the side lot of the police station. Ms. Farace stated when she turned in Excuse 1, she did so inside the police station. The City presented printouts of Facebook Messenger messages between Tammie Connella and Ms. Farace about meeting in the side lot to hand over a doctor's slip. These messages were exchanged on October 31, 2016, which was the date the Excuse 1 was stamped as received. Ms. Farace maintained in her testimony the only time she handed in a doctor's slip to Tammie Connella in the side lot was on November 9, 2016.

Ms. Farace testified she was called in to the police department on November 10, 2016. She testified as follows concerning that meeting:

> A. [Deputy Chief Rachal] called and told me that he had some paperwork for me to sign and I came up to the Police Department to sign paperwork and when I went into his office[,] he had the resignation letter and stuff. He told me he said, you can read over it and sign. I read over it quickly and signed and gave it to him and walked out.
>
> Q. Now, you heard him testify that you didn't mention anything about the doctor or the return to work slip, why didn't you say anything about that?
>
> A. I don't know why he didn't.

5

Q. You mean, why you didn't?

A. Why I didn't?

Q. Yes, why you didn't say anything to him?

A. At the time, I mean, I didn't feel as if I had a choice or an argument in this – the case with him telling me to sign a resignation form that I did not tell anyone that I was going to resign or had no intentions of resigning.

Q. Okay. What did you do after that?

A. I went to the doctor's office to try and figure out what the deal was with doctor's excuse.

Q. And the doctor wrote the letter attached to this fax labeled as F-3, letter dated November 10th, 2016?

A. Yes.

Q. Were you there when she faxed it to the Police Department?

A. Yes.

Q. As far as you knew the – what we're talking about Exhibit C-5, which is the November 9th return to work slip, that was – that had been turned – your testimony is, that had been turned into the Pineville Police Department?

A. Yes.

Q. Did you have any reason not to turn it in?

A. Absolutely not.

Q. I mean, you needed to maintain – you wanted to maintain your sick leave?

A. Yes, yes.

Q. And your doctor had maintained your sick leave?

A. Yes.

Q. Okay. And it was never your intent to resign from the Pineville Police Department?

A. No.

Ms. Farace acknowledged in her testimony that she contacted Chief Weatherford on November 14, 2016, to ask him to write a letter of recommendation on her behalf. She did not, during that meeting, discuss her "resignation" or bring up any contention that she should still be employed by the Pineville Police Department.

Two days later, on November 16, 2016, Ms. Farace timely filed an appeal of the discharge pursuant to La.R.S. 33:2501. On November 30, 2016, the City of Pineville filed a Motion for Summary Disposition, requesting the appeal be dismissed. The Board reviewed the appeal and granted the City's Motion for Summary Disposition without an evidentiary hearing.

Ms. Farace then appealed that determination to the district court. By agreement of the parties, a Consent Judgment was filed and signed by the district court on July 25, 2017 that dismissed the district court appeal and remanded the matter back to the Board, for a full evidentiary hearing.

The full evidentiary hearing was heard by the Board on January 4, 2018. At the conclusion of the hearing (from which the above referenced testimony was taken), the Board voted to deny Ms. Farace's appeal. The Board made the following findings of fact:

1. The Board finds that Sabrina Farace's sick leave expired on November 8, 2016 and she was obligated to appear and report for duty on November 9, 2016.

2. The Board finds Sabrina Farace failed to appear and report for duty on November 9, 2016 and she did not appear on November 9, 2016 with a doctor's excuse or provide any documentation to the City of Pineville that could extend her sick leave.

3. The Board finds that Sabrina Farace resigned from her employment on November 9, 2016 in accordance with Rule XII, Section P of the Pineville Municipal Fire and Police Civil Service Board when she did not report for duty on November 9, 2016.

4. Considering the above, the Board denies Sabrina Farace's "appeal", dated November 16, 2016.

Ms. Farace timely appealed the ruling of the Board to the district court on January 8, 2018. On April 9, 2018, the district court heard oral argument on the appeal and accepted briefs from both parties. The district court upheld the decision of the Board, providing the following oral reasons:

> Okay. The briefs have been reviewed. And based on the argument and testimony, the policy was in place. According to the testimony, today, Ms. Farace knew the policy. And the Court is of the opinion that she did not comply with the policy; that she did not turn in the resignation. I mean excuse me, she did not [turn in] the doctor's excuse on the 9th, and the Court will deny the Appeal. And there the Court finds that there was no manifest error in the ruling of the Civil Service Board.

Ms. Farace has timely filed this appeal, asserting the district court manifestly erred in upholding the Board's decision. She asserts the following assignments of error:

1. The ruling of the District Court upholding the decision of the Board was manifestly erroneous as the appointing authority failed to comply with the Constitutional requirements enunciated by the Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487.

2. The ruling of the District Court upholding the decision of the Board was not made in good faith and for just cause.

## ANALYSIS

In her first assignment of error, Ms. Farace contends her job was terminated without any notice of the charges or an explanation of the evidence against her and is in violation of the express mandate of the United States Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487 (1985). In her second assignment of error, she argues the appointing authority did not act in good faith and for just cause in terminating her employment. Ms. Farace argues she did not resign, but instead was effectively terminated.

Both of Ms. Farace's assignments of error hinge on whether her resignation was voluntary, as the City contends and the Board found, or involuntary (forced), as she contends. "Because an employee's *Loudermill* rights are designed to protect his property right in continued employment, the employee relinquishes those rights when he voluntarily resigns or retires. *See Abel v. Auglaize County Highway Dep't*, 276 F.Supp.2d 724, 738 (N.D.Ohio 2003) (finding employee's resignation renders *Loudermill* inapplicable)." *Russell v. Mosquito Control Bd.*, 06-346, p. 8 (La.App. 4 Cir. 9/27/06), 941 So.2d 634, 640. However, "[a] public employer obviously cannot avoid its constitutional obligation to provide due process by the simple expedient of forcing involuntary 'resignations.'" *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988).

In this case, it is clear that Ms. Farace's resignation was not the result of a disciplinary action, but was simply the mechanical application of Rule XII, Section P, of the Pineville Municipal Fire and Police Civil Service Board, which states, "Any employee who fails to report for duty upon the expiration of any authorized leave will be considered to have resigned from the departmental service on the calendar day following leave expiration."

A review of the record establishes that the only issue of fact in dispute was whether Ms. Farace gave Excuse 2 to Tammie Connella. The City's contention that Ms. Farace did not turn in the slip is the basis for its position that this court should affirm the decision of the Board, as Ms. Farace resigned within the meaning of Rule XII, Section P when she did not report for her shift on November 9, 2016.

The district court correctly noted that, in reviewing a civil service board's finding of fact, it was bound by the manifest error standard. We, too, are bound by that standard. *Moore v. Ware*, 01-3314 (La. 2/25/03), 839 So.2d 940. Under the manifest error standard, we may only reverse if we find that there is no reasonable

basis in the record for the Board's findings. *Stobart v. State through Dep't. of Transp. & Dev.*, 617 So.2d 880 (La.1993).

The dispute in this case solely revolves around whether Ms. Farace delivered Excuse 2 into Ms. Connella's hands. This represents a "she said, she said" dispute. Such "credibility determinations of the trier of fact are subject to *the strictest deference* under the manifest error—clearly wrong standard." *S.J. v. Lafayette Par. School Bd.*, 09-2195, p. 13 (La. 7/6/10), 41 So.3d 1119, 1128. (Emphasis added). Further, the supreme court has reminded us that "where there are two permissible views of the evidence, the factfinder's choice between them **cannot** be manifestly erroneous." *Id*. at 1127. (Emphasis added). Thus, the Board's resolution of the dispute between the City and Ms. Farace over whether she timely submitted a doctor's excuse represents a credibility question that we are virtually powerless to overturn, even if we are convinced that we would have found differently were we serving on the Board.

However, we also note that additional facts preponderate in the City's favor. Ms. Farace and Ms. Connella agree on one point: only one excuse was delivered into Ms. Connella's hands in the parking lot. Ms. Farace testified that only Excuse 2 was delivered to Ms. Connella in the parking lot. Ms. Connella testified that Excuse 1 was delivered to her in the parking lot. Only Ms. Connella's testimony was corroborated by other evidence, the Facebook Messenger messages, which clearly indicate that the date of this parking lot delivery was October 31, 2016, which could only have been the date of delivery of Excuse 1.

Civil service rules, such as Rule XII, Section P, carry the effect of law. La. Const. art. 10, §10(A)(4). Thus, by operation of law, Ms. Farace resigned from her post in failing to present herself for duty on November 9, 2016. Ms. Farace argues

that her resignation consisted of the signing of the letter she was presented by Deputy Chief Rachal. Rule XII, Section P, clarifies this point. The resignation occurred when she failed to appear for her shift. In circumstances under which an employee resigns her post, the *Loudermill* requirement of a pre-termination hearing does not apply. Due process in this situation only requires that Ms. Farace be afforded the right to appeal. *See Peterson v. Dep't of Streets*, 369 So.2d 235 (La.App. 4 Cir.), *writ denied*, 371 So.2d 1344 (La.1979).

## DECREE

For the above reasons, we affirm the judgment of the district court that upheld the decision of the Pineville Municipal Fire and Police Civil Service Board. All costs of this appeal are assessed against appellant, Sabrina Farace.

**AFFIRMED.**

SABRINA FARACE

VERSUS

CITY OF PINEVILLE


**COOKS, J., dissents.**

I respectfully dissent from the majority's decision to affirm the judgment of the trial court. As the majority correctly notes, both of Ms. Farace's assignments of error hinge on whether her resignation was voluntary or forced. However, I find the evidence strongly preponderates against a finding that Ms. Farace voluntarily resigned from her job as a police officer.

While Ms. Farace's actions in signing the "resignation" letter without first attempting to explain why she did not report for her shift the previous day may not have been the wisest course of action, all other facts in the record point to the conclusion that Ms. Farace had no intention of resigning from her position. It is uncontroverted she went to Dr. Merrill's office "first thing" in the morning on November 9, 2016 and received a doctor's slip which purported to extend her sick leave through November 22, 2016. It is also clear from the record, the City made no attempt to contact Ms. Farace to ascertain why she had not reported for her shift.

When the City contacted Ms. Farace on the morning of November 10, 2016 to ask her to come in and report to Deputy Chief Rachal's office, there was no mention made to Ms. Farace that she was being called in to "resign" her position. Upon arrival, there was no discussion whatsoever; she was simply presented with the letter and told to sign same. She was not told she had any option other than to sign the document. Moreover, as soon as she left Deputy Chief Rachal's office on November 10, 2016 after signing the letter, she immediately went to Dr. Merrill's

office. Dr. Merrill testified Ms. Farace was "very distraught" and told her she had "lost her job, you know, *that she was fired*." Dr. Merrill then immediately agreed to send a letter, on behalf of Ms. Farace, to clear up any "disconnect" with the City as to her medical condition and ability to work. Ms. Farace also, within a week, filed an appeal of the discharge pursuant to La.R.S. 33:2501. Clearly, these are not the actions of someone who believed she had voluntarily resigned from her job. Thus, I conclude Ms. Farace did not voluntarily resign from her employment with the City.

Because "[a] public employer obviously cannot avoid its constitutional obligation to provide due process by the simple expedient of forcing involuntary resignations," it now must be determined if this discharge was made in good faith and with just cause, and if Ms. Farace was afforded her constitutionally guaranteed due process requirements under *Louderhill*.

Ms. Farace held a permanent position with the Pineville Police Department, for which she possesses a property right of which she cannot be deprived of without cause and procedural due process. Louisiana Constitution Article 10, § 8, provides in part that: "No person who has gained permanent status in classified state or city service shall be subject to disciplinary action except for cause expressed in writing."

This court in *City of Alexandria v. Alexandria Civil Service Comm'n*, 09-484, p. 7 (La.App. 3 Cir. 11/4/09), 23 So.3d 407, 414, stated:

> In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court held "The essential requirements of due process . . . are notice and an opportunity to respond . . . The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side to the story." See *Henderson v. Sewerage and Water Bd.*, 752 So.2d 252, (La.App. 4 Cir. 12/22/99); *Cannon v. City of Hammond*, 727 So.2d 570 (La.App. 1 Cir. 12/28/98).

The court in *Cannon*, 727 So.2d at 572, further elaborated that "due process requires, at a minimum, some type of a pre-termination hearing before a tenured employee is discharged. [*Department of Public Safety and Corrections, Office of Youth Services*

*v. Savioe,* 569 So.2d 139, 141 (La.App. 1 Cir.1990)]."

In *Cannon*, the officer in question was a Hammond Police Officer with permanent status. The officer was accused of insubordination, and suspended the following day pending an investigation. He was notified in writing that he was the subject of an administrative investigation for insubordination. Aside from the written notice Cannon received on February 29, 1996, "no representative of the City of Hammond contacted Cannon until he was called at home and told to attend an April 9, 1996 'Exit Interview.' Thereafter, Cannon was notified in writing that he had been terminated, effective April 14, 1996." *Cannon*, 727 So.2d at 571.

The court in *Cannon* gave the following reasons for finding the officer in that case had not received his constitutionally guaranteed right to due process:

> Th[e] meeting with the City Personnel Director is the only time Cannon met with City personnel and is the only meeting which could be characterized as a pre-termination hearing. We find that this meeting falls short of the Loudermill requirements in that (1) there is testimony that the decision to terminate had already been made, (2) Cannon was never given a chance to review the City's evidence against him, and (3) Cannon was not advised he could have counsel present nor was he given a chance to prepare in advance for the meeting with the Director of Personnel.
>
> After a thorough review of the record, we find that the learned trial judge herein erred in concluding the procedures followed herein satisfied constitutional due process. We find that the Hammond Fire and Police Civil Service Board's failure to adopt a pre-termination procedure (as evidenced by the testimony of the City Personnel Director and the Chief of Police, Chief Roddy Devall) and the failure to afford Cannon a meaningful pre-termination hearing in accordance with the requirements of *Loudermill* violated the constitutional right to due process as a public employee in the civil service system. This constitutional deprivation of some form of pre-termination hearing is reversible error.

*Id.* at 573-74 (footnote omitted).

As Ms. Farace notes, the facts in the present case are similar in many ways to those present in *Cannon*, 727 So.2d 570. As in *Cannon*, the decision to terminate had already been made by the time Ms. Farace was called in to Deputy Chief Rachal's office. The City did not call Ms. Farace on November 9, 2016 to inquire

as to why she did not show up for her shift. It was uncontroverted she was not given any explanation as to why she was presented with the "resignation" form and was not instructed she could refuse to sign it. Ms. Farace also had no representation with her when she signed the letter. Both Chief Weatherford and Deputy Chief Rachal acknowledged Ms. Farace was not given any type of hearing prior to her termination. Clearly, Ms. Farace was never allowed to present her "side of the story" before she lost her job.

While I find the City did not afford Ms. Farace her due process rights, I also find the City's actions in this matter show the decision made was not "in good faith for cause" as required under La.R.S. 33:2501(E)(3). The Louisiana Supreme Court in *Moore v. Ware*, 01-3341, p. 11-13 (La.2/25/03), 839 So.2d 940, 948-949, noted that "[g]ood faith does not occur if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency. *Martin v. City of St. Martinville*, 321 So.2d 532 (La.App. 3 Cir.1975), *writ denied*, 325 So.2d 273 (La.1976)."

I find the City's conscious refusal to reach out to Ms. Farace is indicative of its failure to exhibit good faith in this case. Absolutely no attempt was made to contact Ms. Farace on November 9, 2016 to determine if she was reporting for duty nor as to any reason why she was not reporting for her shift. It must be noted the City was aware Ms. Farace was coming off of authorized medical leave at this time. Further, as the testimony established, no contact was made with Ms. Farace about getting her service weapon returned to her in the days leading up to November 9, 2016. Moreover, when the City contacted Ms. Farace on the morning of November 10, 2016 to ask her to come in and report to Deputy Chief Rachal's office, there was no mention made to Ms. Farace that she was being called in to "resign" her position. Upon arrival, there was no discussion as to any reason she may have had for not

reporting for her shift the prior day. She was simply presented with the letter and told to sign same.

The record established, and counsel for the City pointed out at trial, in brief and before this court, that there were "three internal affairs investigations into [Ms. Farace's] employment related conduct." The City opines in brief that the "reality is [Ms. Farace] was well aware that if she failed to report for duty on November 9, 2016 she would be tendering her resignation" and "[s]he opted to do that instead of having to address these three ongoing investigations." However, Ms. Farace's actions in visiting her physician on November 9, 2016 and returning again on November 10, 2016 in a "distraught" state over the fact she had been "fired," belies this theory by the City. Her further attempts to fight for the loss of her job indicate she had no intention of resigning her position.

To this court's view, it appears the City chose to rely on a mechanical application of a board rule to "fast track" Ms. Farace's removal from the police force, rather than proceed with an internal affairs investigation. This clearly is not the purpose nor intent of Rule XII, Section P. Thus, we find the City did not act in good faith for cause under the circumstances of this case.

For the above reasons, I would reverse the decision of the trial court and reinstate Ms. Farace to her employment status and award all back pay and benefits due.