MARION F. EDWARDS, Judge.
 

 [ yPlaintifi/'appellant, Ryan Bergeron (“Bergeron”), appeals a judgment of the Twenty-Fourth Judicial District Court dismissing his appeal from a decision of the Kenner Municipal Fire and Police Civil Service Board (the “Board”) to reprimand him.
 

 This matter had its genesis in a February 2008 directive issued by Kenner Fire Chief John Hellmers. At that time, because of financial issues, Chief Hellmers issued a directive abolishing a “medical waiver” policy, which had allowed firefighters to be absent for two separate shifts each year without medical certification of illness. The directive, which was effective immediately, stated:
 

 Effectively immediately, all medical waivers have been abolished. If an employee is prevented from reporting to work as regularly scheduled, due to injury/illness, he/she must furnish the fire department with an Attending Physician’s Statement, KFD/25, prior to 12:00 midnight, before your next scheduled duty date including Kelly and/or vacation. It is mandatory that the Attending Physician Statement, KFD/25, be brought to Fire Headquarters to the Assistant Chief of the Day.
 

 ^Failure to submit an Attending Physician’s Statement in the time frame stated above to the Assistant Chief of the Day at Fire Headquarters, will result in disciplinary action and/or loss of wages.
 

 (Emphasis in original.)
 

 Bergeron was a firefighter in the Ken-ner Fire Department. According to the record, firefighters routinely work twenty-four-hour shifts, which begin at 7:00 a.m. on one day and end at 7:00 a.m. the next day, following which they are off duty for forty-eight hours. Bergeron was scheduled to work a twenty-four-hour shift beginning at 7:00 a.m. on November 2, 2008 and ending on November 3. His next shift was scheduled to begin at 7:00 a.m. on November 5, 2008, and conclude at 7:00 a.m. the next day. Prior to the start of his November 2 shift, Bergeron called in sick.
 
 *145
 
 Pursuant to the directive, Bergeron was required to bring an “Attending Physician’s Statement” to the assistant chief at Fire Headquarters prior to midnight November 4.
 

 Bergeron did not visit a health care provider until November 5, at which time he visited his dentist, who signed the form stating that Bergeron could return to work with no limitations on November 6. Instead of delivering this form to Fire Headquarters, Bergeron’s wife brought the form to Station 36 at approximately 6:30 p.m. on November 5. Both parties agree on appeal that Bergeron should have reported by 12:01 a.m. for the remainder of his November 6 shift. He did not.
 

 On November 11, Chief Hellmers summoned Bergeron to Fire Headquarters. Bergeron’s District Chief, Clinton Young, and Assistant Chief Rodrigue were also in attendance. At the meeting, Bergeron was asked if he knew the policy and why the statement was brought to the station rather than to headquarters. Bergeron explained that he knew the policy, but his papeiwork was not late because it was turned into the station and the captain of that day signed the [¿papers. Bergeron contended it was not a common practice to bring the papers to headquarters, and people bring paperwork to the station all the time. Bergeron and Chief Hellmers argued about whether or not the forms were late. At the conclusion of the meeting, Bergeron was issued a written reprimand on a personnel action form for “Failure to submit medical attending physician’s in the time frame stated in Directive Dated 2/21/2008” and “AWOL on 11/06/2008. Released from doctor on 11/06/2008, did not report for duty at 0000 hrs 11/06/2008.”
 

 The department treated the seven-hour absence as approved annual leave, and Bergeron was paid accordingly. Bergeron filed a timely appeal to the Board on the grounds that the Firefighters Bill of Rights was violated and that his paperwork had been turned in timely. Following a hearing, the Board found the Appointing Authority acted in good faith and for cause based upon the reasons set forth in the form. The term “AWOL” was removed from the document, and the Board determined that there was no violation of the Firefighters Bill of Rights under the evidence presented.
 

 Bergeron then appealed the Board’s decision in the Twenty-Fourth Judicial District Court, averring that the decision was not based on proper or legal cause; specifically, that it failed to enforce or otherwise recognize his rights under the Louisiana Firefighters Bill of Rights, La. R.S. 33:2181 et seq. Before the Board as well as before the district court, Bergeron argued that the meeting at which he received the reprimand was an “investigation,” which triggered protection afforded under the Firefighters Bill of Rights. He averred that he was not given notice of the investigation, nor given the opportunity to obtain counsel. As a result, Bergeron urges that the written reprimand was a nullity.
 

 In affirming the decision of the Board and dismissing the appeal, the district court noted that it was undisputed that the policy had, in fact, been violated. The 1 scourt found that the meeting was not an “investigation” as contemplated by the Bill of Rights but, rather, was simply to allow Bergeron a chance to explain why he violated policy and not all questions posed by a supervisor to an employee “while conducting routine workplace management will establish an ‘investigation’ under the Bill of Rights.” On appeal from that judgment, Bergeron urges that the trial court erred in its characterization of the meeting.
 

 
 *146
 
 La. R.S. 33:2181 spells out certain rights of fire employees. Under that statute, whenever a fire employee is under investigation, certain minimum standards shall apply. Importantly, prior to a formal investigation, the fire employee must be notified in writing of the nature of the investigation, the specific charges, and the identity of the person conducting the interrogation. The statute also provides that the fire employee is entitled to the presence of an attorney and may call witnesses on his behalf. Under La. R.S. 33:2181(0):
 

 No fire employee shall be disciplined, demoted, dismissed or be subject to any adverse action unless the investigation is conducted in accordance with this Sub-part. Any discipline, demotion, dismissal or adverse action of any sort taken against a fire employee without complete compliance with the provisions of this Subpart is an absolute nullity.
 

 If made in good faith and statutory cause, a decision of the civil service board cannot be disturbed on judicial review.
 
 [1]
 
 Good faith does not occur if the appointing authority acted arbitrarily or capriciously, or as a result of prejudice or political expediency.
 
 [2]
 
 Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public service.
 
 [3]
 
 The appointing authority must demonstrate, by a preponderance of the evidence, |fithat the conduct did in fact impair the efficient and orderly operation of the public service.
 
 [4]
 
 The findings of the Board are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error.
 
 [5]
 
 The role of the appellate courts is thus circumscribed by deference to determinations made by civil service boards and we must affirm those determinations if they are reasonable on the record.
 
 [6]
 

 The only finding contested by Bergeron was the determination that his rights under the Firefighters Bill of Rights were not violated; specifically, he contends the meeting between Bergeron and Chief Hellmers was an investigation or “interrogation” within the meaning of La. R.S. 33:2181.
 

 In arguing that the meeting was an “interrogation,” Bergeron quotes similar statutes of other states, as well as La. Op. Att’y Gen. No. 08-0291.
 
 [7]
 
 That opinion discusses the Firefighters Rights as compared to a similar statute regarding the rights of police and law enforcement officers under investigation. It concludes that if circumstances concerning the conduct of a fire employee “require a close study or systematic inquiry into a situation,” the protections afforded a fire employee under La. R.S. 33:2181 apply. The opinion goes on to state that “an investigation of a fire employee begins when an authorized person starts to make inquiries or collect evidence concerning a fire employee where the end result is ‘with a view to possible disciplinary action, demotion, or dismiss
 
 *147
 
 al.’ ” In further accord is Opinion 04-0180, where that office concluded that “any action taken by formal investigating authorities ... which could possibly affect the job status (of a fire employee) requires that the minimum standards of R.S. 33:2181 apply.”
 

 |7Attorney General Opinions are merely advisory and not binding authority,
 
 [8]
 
 although the courts of this State have recognized their persuasive authority.
 
 [9]
 

 Under the Firefighters Bill of Rights, not all inquiries by an employer rise to the level of investigation or interrogation. According to La. R.S. 33:2281(2), an “interrogation” “includes but is not limited to any formal interview, inquiry, or questioning of any fire employee by the appointing authority or the appointing authority’s desig-nee regarding misconduct, allegations of misconduct, or policy violation. An initial inquiry conducted by the fire employee’s immediate supervisors shall not be considered an interrogation.”
 

 Whether or not the meeting was an investigation or interrogation is problematic. The meeting where Bergeron was called upon to defend his actions to the chief, district chief, and assistant chief was somewhat more complex than an initial inquiry. Rather than a simple explanation of his actions, Bergeron and Chief Hellm-ers argued about the timeliness of the physician’s statement, which was essentially an argument interpreting department policy.
 

 Given similar facts or more evidence, another such event might well trigger the notice requirements of La. R.S. 33:2181. The rights of fire employees under the statute cannot be subverted by manipulating or disguising the form of query so as to make the Firefighters Bill of Rights meaningless. The nature of an “inquiry” in each case must be considered on its own circumstances, and the characterization of a meeting by the appointing authority does not determine its true nature.
 

 In the present matter the underlying actions by Bergeron which precipitated the meeting were undisputed. There were no facts to investigate and no evidence |swas presented to show a “systematic inquiry” or “close study.” Although the nature of the meeting was debatable, we cannot say, based on the evidence presented, that the district court committed manifest error in affirming the decision of the Board, finding that the meeting was not an investigation or interrogation so as to trigger the protections afforded by La. R.S. 33:2181.
 

 For these reasons, the judgment is affirmed.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Wyatt v. Harahan Mun. Fire and Police Civil Serv. Bd.,
 
 06-81 (La.App. 5 Cir. 7/25/06), 935 So.2d 849,
 
 writ denied,
 
 06-2322 (La. 12/8/06), 943 So.2d 1091 (citing
 
 Moore v. Ware,
 
 01-3341 (La.2/25/03), 839 So.2d 940).
 

 [2]
 

 .
 
 Id.
 

 [3]
 

 .
 
 Bannister v. Dep’t of Streets,
 
 95-404 (La.1/16/96), 666 So.2d 641.
 

 [4]
 

 .
 
 See, Bannister, supra.
 

 [5]
 

 .
 
 Wyatt v. Harahan Mun. Fire and Police Civil Serv. Bd., supra.
 

 [6]
 

 . Id.
 

 [7]
 

 . 2009 WL 386977 (La. Op. Att'y Gen.) (January 29, 2009).
 

 [8]
 

 .
 
 See, City of New Orleans v. Bd. of Directors of the La. State Museum,
 
 98-1170 (La.3/2/99), 739 So.2d 748;
 
 Conachen v. East Baton Rouge Parish Sch. Bd.,
 
 09-0100 (La.App. 1 Cir. 12/23/09), 30 So.3d 820;
 
 Branton v. Parker,
 
 233 So.2d 278 (La.App. 1 Cir.),
 
 writ denied,
 
 256 La. 359, 236 So.2d 497 (1970).
 

 [9]
 

 .
 
 City of New Orleans v. Bd. of Directors of La. State Museum, supra.