ROBERT PITRE JR.          *        NO. 2021-CA-0632

VERSUS               *

                        COURT OF APPEAL

DEPARTMENT OF FIRE     *

                        FOURTH CIRCUIT

               *

                        STATE OF LOUISIANA

            * * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Paula A. Brown, Judge
Tiffany Gautier Chase)

**LOVE, C.J., DISSENTS AND ASSIGNS REASONS**

Louis L. Robein, III
ROBEIN URANN SPENCER PICARD & CANGEMI, APLC
2540 Severn Avenue, Suite 400
Metairie, LA 70002

      COUNSEL FOR PLAINTIFF/APPELLANT

William R. H. Goforth
Assistant City Attorney
Elizabeth Robins
Deputy City Attorney
Churita H. Hansell
Chief Deputy City Attorney
Kevin C. Hill
Senior Chief Deputy City Attorney
Donesia D. Turner
City Attorney
1300 Perdidio Street, Room 5E03
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLEE

                **REVERSED**
                **APRIL 20, 2022**

*TGC*
*PA*
*B*

Appellant, firefighter Robert Pitre, Jr. (hereinafter "Mr. Pitre"), seeks review of the October 4, 2021 decision issued by the Civil Service Commission (hereinafter "Commission"). The Commission denied Mr. Pitre's appeal and upheld his termination of employment with the New Orleans Fire Department (hereinafter "NOFD"). After consideration of the record before this Court and the applicable law, we reverse the decision of the Commission denying Mr. Pitre's appeal.

### Facts and Procedural History

On June 14, 2020, Mr. Pitre presented for duty to Fire Station #24 located on the corner of Poland Avenue and St. Claude Avenue in New Orleans, Louisiana. Upon arrival, Captain Michael Ebbs (hereinafter "Captain Ebbs") directed Mr. Pitre to obtain his gear and proceed to the location of the other firefighters who were responding to a fire. Captain Ebbs and Mr. Pitre were the only firefighters at the fire station. Prior to departure, Captain Ebbs was reportedly injured when the door through which firetrucks exit fell on Captain Ebbs. Mr. Pitre came to the aid

1

of Captain Ebbs and an ambulance subsequently arrived. Captain Ebbs filed a worker's compensation claim for his injuries.

On June 17, 2020, Mr. Pitre completed a "special report" providing his factual account of the June 14, 2020 incident (hereinafter "the incident"). He recalled hearing Captain Ebbs screaming for help and found him with the door on his leg. Mr. Pitre indicated that he opened the door and reported the incident to dispatch. On July 8, 2020, NOFD provided Mr. Pitre with a "Notification of a Formal Investigation,"[1] which stated:

> The New Orleans Fire Department (NOFD) received reports from you related to the overhead door at Station 24 and an employee's worker's compensation injury claim. The NOFD is conducting a fact-finding investigation related to these incidents. This letter serves to notify you that on Wednesday, July 8, 2020 at 4:30 p.m., a formal investigation and fact-finding interview will be held in connection with these incidents at Fire Headquarters 317 Decatur St., New Orleans, LA 70130.
>
> This will be your opportunity to address the alleged allegation(s). Chief Tim McConnell through his authority as the Superintendent of Fire of the NOFD shall conduct the investigation along with NOFD staff members Chiefs Roman Nelson, Elbert Thomas, Larry White, Paul DeGrange and Terry Hardy who will assist with the investigation and be present at the formal fact-finding interview. The specific charges being investigated are violation of:
> New Orleans Fire Department Rules and Regulations, Chapter 5 General Duties & Rules, General Conduct 5.2.1 which states, "No member shall make any false statements or reports concerning another member's conduct or character, or regarding any business of the Department. Members shall not make any false entries or statements in any Department record books, reports, or testimony. Omission of any facts from any reports or record books with the intent to deceive shall be considered the same as a false entry."

That same day, Mr. Pitre was interviewed by Superintendent Timothy McConnell (hereinafter "Superintendent McConnell") who led the interview and read the notification into the record. In the interview Mr. Pitre recounted the events

---

[1] Mr. Pitre signed the notification immediately before the interview took place.

2

of the incident. Present during the interview were Superintendent McConnell, Chief Roman Nelson, Chief Elbert Thomas, Chief Larry White, Chief Paul DeGrange and Chief Terry Hardy (hereinafter "Chief Hardy"). In preparation for the interview, NOFD reviewed the video footage of the real time crime camera, which was taken from across the street of the fire station.[2] The video footage does not display the incident, but does show movements of an individual. However, NOFD contends it could not ascertain the identity of the employee in the video due to its poor quality. Mr. Pitre was not shown the video footage, nor questioned about it, during the July 8, 2020 interview. Superintendent McConnell questioned Mr. Pitre primarily about the following:

- Mr. Pitre's conduct on June 14, 2020;

- The place Mr. Pitre parked his car;

- Housekeeping duties performed by Mr. Pitre on June 14, 2020;

- Mr. Pitre's attire upon arrival and during the time he was at the fire station;

- Mr. Pitre's movement surrounding the fire truck exit door;

- Whether a civilian approached Mr. Pitre at any point while he was assisting Captain Ebbs; and

- The incident and Mr. Pitre's role in assisting Captain Ebbs.

On August 7, 2020, NOFD received an enhanced version of the real time crime camera video footage. NOFD reviewed the footage and conclusively identified Mr. Pitre as the individual in the video.[3] Thereafter, NOFD provided Mr.

---

[2] On July 6, 2020, the day prior to the interview, NOFD received the real time crime camera video footage.

[3] A civilian is also seen approaching Mr. Pitre in the video.

Pitre with a second "Notification of a Formal Investigation."[4] Mr. Pitre signed the notification and was interviewed for a second time on the same day.[5] During the August 7, 2020 interview, Superintendent McConnell advised Mr. Pitre that he was once again being questioned about the incident. The questions revolved around Mr. Pitre's conduct and movement throughout the fire station on the day of the incident but were essentially the same as the questions asked on July 8, 2020.

On August 10, 2020, Mr. Pitre was officially charged with violating Article 5 Section 5.2.1 of the NOFD Rules and Regulations.[6] He was charged with making false statements during a formal investigation regarding an employee's worker's compensation claim. On September 12, 2020, Mr. Pitre was notified that a disciplinary hearing would be held two days later. At the conclusion of the September 14, 2020 disciplinary hearing, NOFD suspended Mr. Pitre, with pay, pending a pre-termination hearing.

NOFD issued a letter of termination, authored by Superintendent McConnell, on September 28, 2020. Superintendent McConnell found that Mr. Pitre made false statements during the July 8, 2020 and August 7, 2020 interviews

---

[4] This notice, dated August 7, 2020, indicated that Mr. Pitre was to be interviewed, on the same date, as "a continuation of the formal investigation and fact-finding interview that began on Wednesday, July 8, 2020." In all other respects, the August 7, 2020 notice was identical to the July 8, 2020 notice.

[5] The duration of the August 7, 2020 interview was shorter than the July 8, 2020 interview.

[6] New Orleans Fire Department Rules and Regulations, Chapter 5 General Duties & Rules, General Conduct 5.2.1:

> No member shall make any false statements or reports concerning another member's conduct or character, or regarding any business of the Department. Members shall not make any false entries or statements in any Department record books, reports, or testimony. Omission of any facts from any reports or record books with the intent to deceive shall be considered the same as a false entry.

about the events surrounding the incident and thus, violated Article 5 Section 5.2.1 of the NOFD Rules and Regulations.[7]

Mr. Pitre appealed his termination to the Commission challenging the timeliness and justification for termination. He asserted that (1) the investigation into his conduct was not resolved within sixty days of commencement of the investigation and (2) he was truthful in his statements about the incident and events at the fire station on June 14, 2020. The appeal was heard by a hearing officer, over the course of two days, whose task was to provide a recommendation to the Commission. During the hearing, the hearing officer heard extensive testimony and viewed the evidence. While acknowledging that the findings were a "close call," the hearing officer made the following determinations:

---

[7] Specifically, Superintendent McConnell found that Mr. Pitre made the following false statements:

1. [Mr. Pitre] falsely stated that upon arriving for work, [he] entered the station and [was] immediately ordered to get [his] gear by Captain Ebbs, then proceeded directly to the locker room to retrieve [his] bunker gear, and then immediately walked out of the locker room to find Captain Ebbs on the ground with the overhead door on him;
2. [Mr. Pitre] falsely stated that after receiving [his] bunker gear, [he] did not put [his] gear on, but [he was] instead carrying it;
3. [Mr. Pitrre] falsely stated that a few minutes after arriving at the station, [he] found Captain Ebbs on the ground with the overhead door on him;
4. [Mr. Pitre] falsely stated that both [he] and Captain Ebbs had just arrived at the station when the incident involving Captain Ebbs and the overhead door occurred;
5. [Mr. Pitre] falsely stated that retrieving [his] bunker gear was the only thing [he] did that morning before the incident involving Captain Ebbs and the overhead door occurred;
6. [Mr. Pitre] falsely stated that [he] did not perform any kind of housework or similar tasks before the incident involving Captain Ebbs and the overhead door occurred;
7. [Mr. Pitre] falsely stated that [he] did not see, speak to, or address any civilian that morning;
8. [Mr. Pitre] falsely stated that [he was] not present when the overhead doors were opened or closed that morning;
9. [Mr. Pitre] falsely stated that [he] did not know whether Captain Ebbs opened or closed any overhead doors that morning;
10. [Mr. Pitre] falsely stated that [he] did not open or close any overhead door that morning prior to finding Captain Ebbs "on the ground with the door on him."

- Mr. Pitre's termination was timely as the investigation into his conduct commenced on August 7, 2020, when NOFD viewed the enhanced video footage;

- The investigation into Mr. Pitre did not commence on July 8, 2020 because NOFD could not clearly identify the individual in the video as Mr. Pitre;

- NOFD did not have evidence of false statements by Mr. Pitre until receipt of the enhanced video footage on August 7, 2020;

- Mr. Pitre's termination was justified because his actions in the video footage did not align with the statements he provided during his July 8, 2020 and August 7, 2020 interviews.

In light of these findings, the hearing officer recommended upholding Mr. Pitre's termination and observed that the level of discipline was appropriate because it matched the severity of the misconduct.

The Commission reviewed the transcript and exhibits from the hearing as well as the hearing officer's reports.[8] The Commission issued its decision on October 4, 2021, concluding that Mr. Pitre provided false statements regarding his conduct and the incident. The Commission determined that Mr. Pitre's statements contradicted the enhanced real time camera video footage. The Commission further found that based on the video the door did not fall on Captain Ebbs' leg, and Mr. Pitre's statements to the contrary impaired the efficient operation of NOFD and interfered with the worker's compensation claim investigation. Thus, the Commission denied Mr. Pitre's appeal and upheld his termination. This appeal followed.

---

[8] The hearing officer submitted a report on May 19, 2021 and an updated report on September 23, 2021.

## Standard of Review

Civil service cases are reviewed utilizing a mixed standard of review, depending on the issue being analyzed. In *Russell v. Mosquito Control Board*, this Court stated:

> In *Banks v. New Orleans Police Dep't.,* 2001–0859, p. 3 (La.App. 4 Cir. 9/25/02), 829 So.2d 511, 513–14, we articulated the standard of review in civil service cases. First, the review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly erroneous standard. Second, when the Commission's decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. A legal error occurs here when a trial court applies the incorrect principles of law and such errors are prejudicial. Finally, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review. *See Stern v. New Orleans City Planning Comm'n,* 2003–0817, pp. 5–6 (La.App. 4 Cir. 9/17/03), 859 So.2d 696, 699–700.

*Russell v. Mosquito Control Bd.*, 2006-0346, pp. 7-8 (La.App. 4 Cir. 9/27/06), 941 So.2d 634, 639-40; *see Achord v. Dep't of Fire*, 2018-0635, pp. 4-5 (La.App. 4 Cir. 12/27/18), 318 So.3d 816, 819.

## Discussion

By his assignments of error, Mr. Pitre argues the Commission erred in upholding his termination. As a threshold matter, Mr. Pitre points out a procedural flaw, namely that the investigation into his conduct was not completed timely as required by La. R.S. 33:2186(A), and thus, his termination is null and void. Notwithstanding the procedural error, Mr. Pitre maintains that NOFD failed to satisfy its burden of proof.

In an appeal before the Commission, pursuant to La. Const. Art. X, § 8(A), the burden of proof rests with the appointing authority, which must prove by a

preponderance of the evidence "(1) the occurrence of the complained of activity; and (2) that the conduct complained of impaired the efficiency of the public service in which the appointing authority is engaged." *Matusoff v. Dep't of Fire*, 2019-0932, p. 4 (La.App. 4 Cir. 5/20/20), ___ So.3d ___ 2020 WL 2562940 *2, *writ denied*, 2020-00955 (La. 10/20/20), 303 So.3d 313. Prior to an analysis of whether NOFD satisfied its burden of proof, it must first be determined whether the procedural investigative requirements were followed. Accordingly, we find the narrow issue presented to this Court is whether NOFD timely completed the investigation into Mr. Pitre's conduct within the procedural statutory timeframe.

## Timeliness of Investigation

La. R.S. 33:2181, known as the Firefighters Bill of Rights, confers specific procedural protections upon firefighters under disciplinary investigation. It provides, in pertinent part:

> A. Unless context otherwise requires, the following terms when used in this Subpart shall be given the meanings assigned below:

> ***

> (2) "Interrogation" includes but is not limited to any formal interview, inquiry, or questioning of any fire employee by the appointing authority or the appointing authority's designee regarding misconduct, allegations of misconduct, or policy violation. An initial inquiry conducted by the fire employee's immediate supervisors shall not be considered an interrogation.

> B. Whenever a fire employee is under investigation, the following minimum standards shall apply:

> ***

> (1) Prior to commencing a formal investigation of a fire employee, the appointing authority shall notify the employee in writing of the nature of the investigation, of the identity and authority of the person conducting such investigation, and of the specific charges or violations being investigated.

8

(2) The fire employee being investigated shall be informed in writing at the commencement of any interrogation of the nature of the investigation, of the identity and authority of the person conducting such investigation, of the identity of all persons present during such interrogation, and of the specific charges or violations being investigated. The fire employee shall be allowed to make notes.

\*\*\*

(4) All interrogations of any fire employee in connection with the investigation shall be recorded in full. The fire employee shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his statements, upon submitting a written request to the fire chief.

(5) The fire employee shall be entitled to the presence of his counsel or representative, or both, at any interrogation in connection with the investigation. The fire employee's representative or counsel shall be allowed to offer advice to the employee and to make statements on the record at any interrogation in the course of the investigation.

\*\*\*

C. No fire employee shall be disciplined, demoted, dismissed or be subject to any adverse action unless the investigation is conducted in accordance with this Subpart. Any discipline, demotion, dismissal or adverse action of any sort taken against a fire employee without complete compliance with the provisions of this Subpart is an absolute nullity.

Additionally, "[a]ny investigation of a fire employee which is conducted pursuant to this Subpart shall be completed within sixty days, including the conducting of any pre-disciplinary hearing or conference." La. R.S. 33:2186(A). The fire department may petition the governing authority for an extension of time in which to complete its investigation upon a showing of good cause. La. R.S. 33:2186(B). Mr. Pitre asserts that the investigation into his conduct commenced on July 8, 2020 when NOFD conducted his first interview. Conversely, NOFD maintains that the investigation into Mr. Pitre's conduct did not begin until August 7, 2020 after it reviewed the enhanced real time crime camera video footage and deciphered inconsistencies in Mr. Pitre's version of facts. NOFD argues that the

9

July 8, 2020 interview of Mr. Pitre was a fact-finding investigation into Captain Ebbs' conduct relative to his worker's compensation claim, not the conduct of Mr. Pitre. According to NOFD, Mr. Pitre was interviewed on July 8, 2020 solely because he was a witness to the incident involving Captain Ebbs. The Commission agreed with NOFD and found that the investigation into Mr. Pitre did not commence until August 7, 2020, as NOFD was interviewing Mr. Pitre as a witness in connection with the fact-finding investigation of Captain Ebbs prior to that date.

The timeliness of the Mr. Pitre's termination presents an intertwined two-fold inquiry as the date the investigation originated determines whether his termination was timely. Specifically, the start of the investigation is decided by whether the events of July 8, 2020 are classified as an interrogation or initial inquiry into Mr. Pitre's conduct.

An interrogation is defined as including any formal interview, inquiry or questioning, but does not include an initial inquiry by the fire employee's immediate supervisor. La. R.S. 33:2181(A)(2). The events of July 8, 2020 are inextricably convoluted creating difficulty in deciphering whether an interrogation or initial inquiry occurred on July 8, 2020. For this reason, and a clearer determination, we separately consider the July 8, 2020 interview and July 8, 2020 notification letter prior to our analysis.

### *July 8, 2020 Interview*

Superintendent McConnell began Mr. Pitre's interview by advising him that this was a "formal investigation" into misconduct. As previously noted, present during Mr. Pitre's July 8, 2020 interview were Superintendent McConnell, Chief Roman Nelson, Chief Elbert Thomas, Chief Larry White, Chief Paul DeGrange

and Chief Hardy. Superintendent McConnell questioned Mr. Pitre primarily about the following:

- Mr. Pitre's conduct on June 14, 2020;

- The place Mr. Pitre parked his car;

- Housekeeping duties performed by Mr. Pitre on June 14, 2020;

- Mr. Pitre's attire upon arrival and during the time he was at the fire station;

- Mr. Pitre's movement surrounding the fire truck exit door;

- Whether a civilian approached Mr. Pitre at any point while he was assisting Captain Ebbs; and

- The incident and Mr. Pitre's role in assisting Captain Ebbs.

Superintendent McConnell also questioned Mr. Pitre about the discrepancies of his "special report" compared to the "special report" provided by Captain Ebbs after the incident. Superintendent McConnell asks Mr. Pitre if he would be "surprised" if his "special report" "differed" from that of Captain Ebbs. While determining that the July 8, 2020 interview complied with the Firefighter Bill of Rights, the Commission found that Mr. Pitre was not being investigated on July 8, 2020, rather he was interviewed as a witness in connection with the investigation into Captain Ebbs.

### July 8, 2020 Notification Letter

The "Notification of a Formal Investigation" received by Mr. Pitre on July 8, 2020 alerted him of the commencement of a "formal investigation and fact-finding interview" into the incident. Superintendent McConnell testified that despite the heading of the July 8, 2020 notification letter, Mr. Pitre was not under

investigation for misconduct on July 8, 2020. Likewise, Chief Hardy testified that he did not believe Mr. Pitre was under investigation at the time of the July 8, 2020 interview.

NOFD asserts that the notification letter was provided to Mr. Pitre to notify him of the investigation into the allegations regarding Captain Ebbs. The notification letter does not specifically state the target of the investigation, nor does Captain Ebbs' name appear in the notification letter. In an attempt to explain the ambiguities of the notification letter NOFD submitted two examples of notification letters sent to other employees who arrived after the incident. These letters were submitted to demonstrate that the letters utilize boilerplate language, even when directed to those employees not under investigation. However, one of the employees testified that after receipt of the notification letter, he was only asked to complete a questionnaire about the incident and was not formally interviewed. While acknowledging that the notification letter is ambiguous as to whom the misconduct investigation is aimed towards, the Commission agreed with NOFD that the letter to Mr. Pitre described the charges regarding the investigation into Captain Ebbs.

**Application of the Firefighters Bill of Rights**

"The rights of fire employees under the statute cannot be subverted by manipulating or disguising the form of query so as to make the Firefighters Bill of Rights meaningless. The nature of an 'inquiry' in each case must be considered on its own circumstances, and the characterization of a meeting by the appointing authority does not determine its true nature." *Bergeron v. City of Kenner*, 2010-229, p. 7 (La.App. 5 Cir. 10/26/10), 51 So.3d 143, 147.

The definition of interrogation includes a formal interview of the employee. La. R.S. 33:2181(A)(2). The events of the July 8, 2020 interview suggest that at the time of the interview Mr. Pitre was being interrogated. At the beginning of the July 8, 2020 interview Superintendent McConnell notified Mr. Pitre of all parties present in the interview room and NOFD recorded the interview. NOFD's questioning heavily focused on Mr. Pitre's actions as portrayed in the video footage. He was repeatedly asked the same questions throughout the interview, suggesting that NOFD believed there to be inconsistencies in his responses when compared to the real time crime camera video footage. NOFD conducted an interrogation under La. R.S. 33:2181(A) by questioning Mr. Pitre about his inconsistent statements. Mr. Pitre was called upon to defend his actions to his superiors, and all of NOFD's actions at the July 8, 2020 interview complied with the procedural requirements outlined in La. R.S. 33:2181 for a firefighter under disciplinary investigation. The questions in the July 8, 2020 interview appear to be a pretext for Mr. Pitre's termination as NOFD ascertained these questions after viewing the original real time crime camera video footage in July. While NOFD asserts that it was unable to determine the individual in the video as Mr. Pitre after viewing the original real time crime camera video footage, Chief Hardy testified that he knew Mr. Pitre was at the station on June 14, 2020 based on Mr. Pitre's "special report." Additionally, it is undisputed that Mr. Pitre and Captain Ebbs were the only individuals at the station as the other firefighters were out responding to a fire. The events of July 8, 2020, contradict NOFD's assertion that the interview was an initial inquiry.

A review of the record as a whole demonstrates that NOFD conducted an interrogation, not an initial inquiry. For instance, a written notification of the

13

investigation was provided to Mr. Pitre and the interview was recorded. *See* La. R.S. 33:2181. Likewise, the notification letter addressed to Mr. Pitre indicated that he was being interviewed in connection with an investigation of violation of Article 5 Section 5.2.1 of the NOFD Rules and Regulations. While no specific name was listed in the notification, the letter was addressed to Mr. Pitre. Also, another firefighter received the same notification letter as Mr. Pitre, yet was not required to participate in a formal interview. The circumstances surrounding the events of the July 8, 2020 interview support the contention that NOFD conducted more than an initial inquiry into Mr. Pitre's misconduct, and the true nature of NOFD's actions on that date can be defined as an interrogation under La. R.S. 33:2181(A)(2). *See Bergeron*, 2010-229, p. 7, 51 So.3d at 147.

This Court acknowledges that "'deference will be given to the factual conclusions of the Commission.'" *Moran v. Dep't of Police*, 2018-0433, pp. 7-8 (La.App. 4 Cir. 10/10/18), 257 So.3d 749, 754 (quoting *Pope v. New Orleans Police Dep't*, 2004-1888, p. 6 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4) (citation omitted). However, when the Commission's decision involves procedure and interpretation of laws we are not bound by the findings of the Commission. *Russell*, 2006-0346, pp. 7-8, 941 So.2d at 639-40. When the Commission applies incorrect principles of law, which are prejudicial, legal error occurs and this Court gives no special weight to the findings of the Commission. *Id*. We must exercise our constitutional duty to review questions of law and make a determination based on the record. *Id*.

The basis for Mr. Pitre's termination was his responses provided in the July 8, 2020 interview. As stated above, the questions in the August 7, 2020 interview

were practically identical to those posed in the July 8, 2020 interview.[9] This finding supports Mr. Pitre's contention that he was under investigation as of July 8, 2020. Considering both the July 8, 2020 interview and July 8, 2020 notification letter, we conclude the Commission erred in determining that the investigation into Mr. Pitre did not commence on July 8, 2020 and timely complied with La. R.S. 33:2186(A).

## Conclusion

For the foregoing reasons, we find NOFD failed to timely complete its investigation into the actions of Mr. Pitre. The Commission erred in finding that NOFD complied with the sixty-day requirement outlined in La. R.S. 33:2186(A). The investigation into Mr. Pitre began July 8, 2020 and was completed upon his termination on September 28, 2020. Pursuant to La. R.S. 33:2186(A), NOFD was required to complete the disciplinary investigation by September 7, 2020 and failed to do so. Accordingly, NOFD's investigation of Mr. Pitre failed to timely comply with La. R.S. 33:2186(A). The discipline imposed on a firefighter is an absolute nullity when the investigation into the firefighter's misconduct is administered in violation of the applicable statutes. La. R.S. 33:2181(C). Therefore, we find Mr. Pitre's termination null and void. Accordingly, we reverse the October 4, 2021 decision of the Commission to deny Mr. Pitre's appeal and uphold his termination.

As we find the Commission erred in finding that the investigation into Mr. Pitre commenced on August 7, 2020 and his termination was therefore timely, we pretermit discussion of the merits of his termination.

---

[9] *See* Footnote 5.

## Decree

The October 4, 2021 decision of the Commission is reversed.

**REVERSED**